STATE of Iowa, Appellee,

v.

**Lee Kenneth SHEETS, Appellant.**

**No. 63757.**

Supreme Court of Iowa.

April 23, 1980.

Robert A. Rolfe of Phipps & Rolfe, Lamoni, for appellant.

Thomas J. Miller, Atty. Gen., Douglas F. Staskal, Asst. Atty. Gen., and Arnold O. Kenyon III, Union County Atty., Creston, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE, and LARSON, JJ.

LARSON, Justice.

This defendant appeals his conviction of burglary in the first degree, in violation of sections 713.1–.2, The Code 1979. He alleges that his conviction should be reversed because (1) the county attorney who signed the information filed against him had failed to qualify for the office after being duly elected and (2) failure of the State to reveal exculpatory evidence rendered his trial unfair. We reject defendant's assignments of error and affirm the trial court.

Sheets was charged on January 22, 1979, with first-degree burglary of the Creston Medical Clinic. Several officers testified they saw Sheets inside the clinic, and one said he saw Sheets holding a short-barreled revolver. The burglars fled. A special deputy chasing one of them slipped and fell. While he was on the ground, he noticed Sheets kneeling beside a snowbank nearby. He arrested Sheets and made him lie prone next to the snowbank while awaiting the arrival of other officers. While lying there, Sheets started to move one of his hands until he was ordered to lie still. The officers spent another twenty to thirty minutes searching for the other suspect. When they returned and searched the area where Sheets was apprehended, they located a police special .38 revolver stuck in the snowbank within arm's reach of where Sheets was discovered. Five bullets were removed from the gun. Before Sheets was incarcerated, ten similar bullets were removed from his coveralls.

Sheets was apprehended on the same side of the highway as the clinic. On March 9, after the snow had melted, a Colt .45 handgun was discovered in the backyard of a residence on the opposite side of the highway and over a block from the point where the defendant was arrested.

The jury returned a verdict of guilty and defendant was sentenced on May 4, 1979. Defendant filed his appeal notice on June 7.

The disqualification of the county attorney was first brought to the court's attention in alternative motions to dismiss or for a new trial filed in the trial court on August 3, 1979, which was after the notice of appeal had been filed. These motions were based on the asserted failure of the county attorney to properly qualify for his office following his election. The parties stipulated he was duly elected, filed his bond with the auditor, and took his oral oath of office. The asserted disqualification was his failure to accompany his bond with a written oath.

I. *The County Attorney Issue.* Defendant contends that despite the fact a notice of appeal had been filed, the trial court nonetheless could rule on his motion raising the issue of the absence of a county attorney. His theory is that, since the court lacked subject-matter jurisdiction, there was no valid verdict or sentencing which would start the running of time limits on filing post-trial motions under Iowa R.Crim.P. 23. We find no merit in this theory but conclude that, even if properly preserved, the issue must be resolved against the defendant.

The appellant argues that because Mr. Kenyon failed to qualify as county attorney, there was a vacancy in the office, and the information filed by him did not invoke the criminal jurisdiction of the district court. Defendant waived this objection by failure to file it within the time limitations of Iowa R.Crim.P. 10. That rule provides, in part:

2. *Pretrial motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised prior to trial;

a. Defenses and objections based on defects in the institution of the prosecution.

b. Defenses and objections based on defects in the indictment or information

(other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceeding).

. . . . .

3. *Effect of failure to raise defenses or objections.* Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial under this rule shall constitute waiver thereof, but the court for good cause shown, may grant relief from such waiver.

4. *Time of filing.* Motions hereunder, except a motion for a bill of particulars, shall be filed either within thirty days after arraignment or prior to the impaneling of the trial jury, whichever event occurs earlier, unless the period for filing is extended by the court for good cause shown.

We were presented with a very similar situation in the recent case of *State v. Hobson*, 284 N.W.2d 239 (Iowa 1979). In *Hobson* the information was signed by an assistant attorney general, rather than by the county attorney or his assistant. we ruled that the objection was waived for failure to assert it within thirty days of arraignment and that such a defect in the information did not affect subject-matter jurisdiction. *Id.* at 241.

■ Defendant seeks to distinguish *Hobson* on the basis that in that case there was a valid county attorney who could have properly signed the information, while in this case there was none. We need not determine whether Mr. Kenyon had in fact failed to qualify for the office of district attorney for defendant's argument overlooks the *de facto* doctrine which has long applied to public officers in this jurisdiction. We have said

it is because officers have failed to comply with similar directory provisions, and while acting in good faith in the discharge of their official duties, have transacted business materially affecting the public and third parties, that public policy has dictated the distinction between an

officer *de facto* and one *de jure*, and given validity to the acts of the former, until his right to discharge the duties is by some direct proceeding denied.

*Keeney v. Leas*, 14 Iowa 464, 469–70 (1863) (notary public took oath, executed and filed bond, but failed to have commission recorded). Mr. Kenyon's acts in filing the information were given validity by this doctrine, even if he was not a *de jure* county attorney. Thus, this alleged defect would not affect the subject-matter jurisdiction of the district court.

II. *Exculpatory Evidence.* Before trial defendant requested revelation of "[a]ll exculpatory evidence known to law enforcement officials." At the time of the request, the State was unaware of the existence of the second gun. When it was turned in shortly before trial, the prosecution apparently concluded that the location of the gun was so far from the scene of this crime that it negated its exculpatory nature.

The Supreme Court considered the situation where there was a blanket request for "Brady material" and where the evidence was not "obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request" in *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 354 (1976). The court set out the standard for resolving such issues:

[t]he judge should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless-error standard. . . Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.

This means that the omission must be evaluated in the context of the entire record. *If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.* On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Id.* at 111–12, 96 S.Ct. at 2401–02, 49 L.Ed.2d at 354–55 (emphasis added). The Court placed great emphasis on the fact that "after considering it in the context of the entire record the trial judge remained convinced of respondent's guilt beyond a reasonable doubt . . . ." 427 U.S. at 114, 96 S.Ct. at 2402, 49 L.Ed.2d at 355–56.

The evidence in this case does not meet the materiality standard set down in *Agurs.* The trial court found

that based on the evidence produced at the trial, there would be no relevant connection between the finding of this second gun and the gun which the jury found the Defendant to have had, that to say that the jury would have possibly found that the Defendant didn't have in his possession the gun that was found, simply because another gun was found a block and a half away, when there was no evidence that the Defendant had ever been in that vicinity, it would, in the opinion of the Court, not be relevant or material . . . .

It would be pure speculation to say that if this second gun had been known to the Defendant and had been introduced at this trial, that the jury would have had a different result in its verdict.

We agree with the trial court's assessment of this evidence. Because the discovery of the second gun was not material to defendant's innocence, the failure of the State to reveal its existence did not deprive defendant of a fair trial.

We find no error in the trial court proceedings and therefore affirm.

AFFIRMED.