STATE of Iowa, Appellee,

v.

John MULDER, Appellant.

No. 63358.

Supreme Court of Iowa.

Dec. 23, 1981.

J.F.M. Samore, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Julie F. Pottorff, Asst. Atty. Gen., and David J. Dutton, Sp. Prosecutor, for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE, and LARSON, JJ.

LeGRAND, Justice.

What makes this case difficult is that it imprisons for life a fifteen-year-old boy convicted of first-degree murder. Finding no reversible error, we affirm the judgment and sentence imposed pursuant to section 690.2, The Code 1975.

Error was not preserved on some of the matters raised on this appeal, and we decline to consider them except as they relate to the issue of ineffective counsel. We accordingly limit our review to the following issues: (1) insufficiency of the evidence; (2) the State's failure to disclose exculpatory evidence; (3) prosecutorial misconduct; and (4) ineffectiveness of counsel.

Some explanation of the delay in disposing of this case should be made. Jean Marie Homan was killed on April 23, 1976. Defendant was indicted for her murder on September 18, 1978. On defendant's motion for change of venue, the case was tried to a jury in Kossuth County. The trial resulted in a verdict of guilty on the charge of first degree murder. Defendant appealed.

On the day before the appeal was originally set for oral argument before this court, the Attorney General reported the possibility that exculpatory evidence had been withheld from defendant. We, therefore, remanded the case to district court under Iowa R.App.P. 12(f) for an evidentiary hearing on that issue and also on the question of ineffective counsel. The appeal is now here for determination on the original record supplemented by the record from the remand hearing.

On the night of April 23, 1976, Jean Homan was asleep in her bedroom. Her husband, Carl, was in an adjoining twin bed but not asleep. Carl caught a brief glimpse of a figure reflected in a mirror. Thinking it might be his son returning unexpectedly from college, Carl called out his name. There was no response, but immediately Carl saw the barrel of a rifle extend into the room, followed by a single shot. Jean, who had awakened, cried out that she had been hit. Carl jumped out of bed and pursued the intruder long enough to see him escape across a nearby golf course. He then returned to the bedroom to aid his wife. The deputy county examiner, who arrived on the scene a half hour later, pronounced Mrs. Homan dead and fixed the time of her death at shortly before midnight. Other facts will be recited as we discuss the issues to which they relate.

## I. *Insufficiency of the Evidence.*

When sufficiency of the evidence is challenged, as it was here by a motion for directed verdict, we review the evidence in the light most favorable to the state. The evidence must be such that, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt. *State v. Welton*, 300 N.W.2d 157, 159–60 (Iowa 1981); *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). All legitimate inferences arising reasonably and fairly from the evidence may be indulged in to support the verdict. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). A jury verdict is binding on us if there is substantial evidence to support it. By "substantial evidence" we mean evidence which could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.*

We mention one other principle governing our consideration of this appeal. The State's case was entirely circumstantial. Defendant argues this is significant in considering the sufficiency of the evidence, but we have held circumstantial evidence is as probative and convincing as direct evidence. *State v. Gibb*, 303 N.W.2d 673, 685 (Iowa 1981); *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979).

With these general rules in mind, we set out the facts the jury could have found established beyond a reasonable doubt, although some of them were sharply contested.

Mrs. Homan was killed by a single shot from a .22-caliber rifle which had been stolen by the defendant from the Dennis Friedman farm about a week before the murder. When the rifle was found in an abandoned meter pit, it contained fingerprints identified as being "consistent" with defendant's. This did not necessarily connect defendant with the murder because he admitted stealing the weapon. He argues his prints would be there from his handling of the gun at the time of the theft. No other prints were found on the weapon.

The evidence concerning the theft of the rifle and subsequent control over it was vital to the state's case. Defendant gave at least four versions of what disposition he made of the weapon after taking it from the Friedman farm, ranging from hiding it in a cemetery to giving it to a "friend" on the night of the murder. Obviously these unlikely stories were disbelieved by the jury. Defendant argues his numerous fabrications resulted from fright and immaturity; but the jury could have found that defendant lied in an effort to show he had disposed of the murder weapon before the night Mrs. Homan was killed.

The murder occurred sometime between 11:30 p.m. and midnight. Defendant was in the immediate vicinity of the Homan residence at that time, returning to his home— just one hundred yards from where the Homans lived—from an evening of incidental drinking and restlessness around town. He could easily have committed the crime within the time frame permitted by the testimony concerning the time of death.

The State was required to prove the elements of first-degree murder beyond a reasonable doubt. At the time of the crime, first-degree murder was defined in section 690.2, The Code 1975, as follows:

> All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, . . . is murder in the first degree, and shall be punished by imprisonment for life at hard labor in the penitentiary and the court shall enter judgment and pass sentence accordingly.

The use of a deadly weapon accompanied by an opportunity to deliberate is evidence of malice, deliberation, premeditation, and intent to kill. *State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976); *State v. Lass*, 228 N.W.2d 758, 766 (Iowa 1975).

We believe the jury could reasonably find that defendant armed himself with a rifle; entered the Homan residence for some undisclosed purpose; deliberately pointed the gun at either Mr. Homan or his wife; and shot her dead. Thus all the elements of first-degree murder were present.

Defendant argues the expert testimony concerning fingerprints was tenuous and

inconclusive. He makes the same attack on the ballistics testimony. In both instances, however, the evidence presented a jury question.

Defendant points to other inconsistencies in the testimony. These do no more than present disputed fact questions for jury determination. They were all resolved against defendant, and we are bound by the jury's verdict. The trial court was right in denying defendant's motion for directed verdict.

## II. *Exculpatory Evidence.*

As already mentioned, we remanded this case for a hearing to determine if the State had failed to disclose exculpatory evidence. The remand order limited the inquiry to the circumstances surrounding the discovery of the murder weapon in an abandoned meter pit.

The weapon was found by a deputy sheriff more than two weeks after the murder. It was found in a meter pit on the property of a nearby lumber yard. The pit was approximately eight feet deep and capped with a heavy removable cover. On at least two occasions prior to May 10, the pit had been observed by officers investigating the crime, but it had never been examined with the cover off.

We do not believe the circumstances surrounding the discovery of the gun were exculpatory. Defendant makes capital of the fact the gun was not found until more than two weeks after the crime. Apparently he concludes from this that the weapon was not there until then. Even if this were true—and it is not established by the evidence—it would neither hurt nor help defendant's case. Someone put the gun there, either shortly after the crime or later. Defendant had the same opportunity to do this as anyone else. For the same reason, discrepancies in the testimony concerning the position of the lid at different times are of no significance. The description of the meter pit as being empty shortly before the gun was found was explained by the officer who had so described it. He testified "empty" in the context used meant it was no longer used as a meter pit.

We had occasion to discuss a similar question in *State v. Sheets*, 291 N.W.2d 35, 37–38 (Iowa 1980), where we quoted extensively from *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Much of what we said there is applicable here. The finding of the gun at a later date neither suggests defendant put it there nor that he didn't. He always had the opportunity to do so. It would be different if defendant could have put the gun in the pit *only* at the time of the crime; but that is not the case. Under the facts of this case, there is no connection between the *time* the gun was found and the guilt or innocence of the defendant. We agree with the trial court's conclusion that this evidence could not have engendered a reasonable doubt of defendant's guilt.

One other matter involving exculpatory evidence was explored at the remand hearing, although it was beyond the scope of our order and was not a proper subject of inquiry. *See State v. Johnson*, 298 N.W.2d 293, 294 (Iowa 1980). We consider that question anyway in an effort to avoid further hearings and resulting appeals.

A deputy sheriff's deposition stated that Mr. Homan at one time said the murderer "couldn't have been John Mulder." The circumstances under which this statement was made, the persons who were present, the investigators to whom it was later repeated (if it was repeated), and the prosecutor's awareness of the statement are all matters of speculation. The witness who related the statement did not hear it made and could not recall who told him of it.

Furthermore the statement gave little, if any, information defendant did not already have. Mr. Homan at no time connected defendant with the crime. On the contrary, he looked to him for some assistance in discovering who was in the neighborhood on the night of the murder. Mr. Homan was unable to give any description of the intruder except a general estimate of his height and his clothing.

■ Mr. Homan's alleged statement amounted to nothing more than an expression of his inability to identify defendant as the intruder, a fact already known to and relied on by the defense. It does not meet the materiality test for exculpatory evidence laid down in *Agurs* and adopted by us in *Sheets*.

### III. *Inadequacy of Counsel.*

■ Mulder alleges that he was denied the effective assistance of counsel. Ordinarily this claim should be considered in postconviction proceedings rather than on appeal because counsel then may defend his conduct of the trial. *State v. Poyner*, 306 N.W.2d 716, 719 (Iowa 1981) (citing several Iowa cases). In the present case our remand order directed that a record be made on the claim of ineffective counsel, and the need for postconviction hearing on this issue was thus avoided.

■ Defendant has the burden to show by a preponderance of the evidence his trial counsel was ineffective. *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980). The test is whether counsel's performance, under all the circumstances, was within the range of normal competency. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). We make our own evaluation of the totality of the circumstances because the issue raises alleged violations of constitutional safeguards. *Id.*

Defendant's lead trial counsel was Donald W. Sylvester, who was brought into the case by James L. Waite, a Sioux City attorney, who first represented the defendant. Mr. Waite assisted in the trial of the case, although it was Mr. Sylvester who directed the conduct of the proceedings and decided matters of defense strategy. No claim is made that Mr. Waite was ineffective. In fact, he supports defendant in attacking Mr. Sylvester's performance. To say the least, Mr. Waite's protests seem untimely. If Mr. Sylvester's representation was as shabby as is now claimed, it is difficult to understand why Mr. Waite sat by without some attempt to make it better.

We are faced with a strange record on this issue. Although one purpose of the remand was to permit defendant to establish Mr. Sylvester's incompetency, his present counsel made little effort to do so at the remand hearing. Except for one or two matters, trial strategy and questions of professional judgment were pursued only on the State's cross-examination. Thus if there is a case for reversal, it was made by the State, not by the defendant.

■ Many of the charges leveled against Mr. Sylvester are groundless. For instance, defendant asserts he failed to object to the intimidation of his witnesses by the State. The record discloses no "intimidation." The sheriff's office had made inquiries concerning the identity of possible witnesses and their places of residence. When this was brought to the attention of the State, it was promptly stopped. Furthermore there is no evidence the witnesses knew there was an attempt to establish any surveillance over them. Counsel effectively stopped the objectionable conduct before there was any prejudice. What more should he have done?

Another unsupported claim is that counsel permitted a picture of the victim taken when she was a young woman to be displayed to the jury when it had not been introduced into evidence. In fact the picture had been admitted. The fact that it showed Mrs. Homan as she appeared in earlier days could hardly have deceived the jury into believing she had not grown older.

The most serious accusations of ineffective counsel concern Mr. Sylvester's preparation for trial, his examination of witnesses, his final argument, and his failure to seek suppression of incriminating statements made by defendant.

We find much in the record about which lawyers might disagree concerning both preparation and trial. There is nothing, however, which brands Mr. Sylvester's representation as depriving defendant of effective counsel. He interviewed witnesses, took depositions, followed leads to discover

evidence, sought assistance as to ballistics evidence, and developed a theory of defense which he adhered to throughout the case.

■ Counsel's failure to make a vigorous effort to suppress defendant's statements is questionable. The statements were damaging and were made under circumstances which made them suspect. Whether the *Miranda* standards were satisfied, whether the officers unfairly obtained incriminating admission from this fifteen-year-old defendant are matters not satisfactorily answered. The State was required to prove by a preponderance of the evidence that defendant's statements were made after an effective waiver of his *Miranda* rights and were made voluntarily; but this obligation arises only upon proper objection or motion to suppress. *State v. Washington*, 257 N.W.2d 890, 895 (Iowa 1977), *cert. denied*, 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978).

The age of defendant presents additional problems, as we noted in *In re Thompson*, 241 N.W.2d 2, 5–6 (Iowa 1976), where we said:

> [We] ... decline to adopt the concept every minor is incompetent as a matter of law to waive his rights to remain silent and to an attorney. At the same time, we emphasize the importance of securing for the minor under interrogation the advice and consultation of a parent, guardian, custodian, adult friend, or lawyer. See § 232.16, The Code. Failure to provide such support will throw a deep shadow of judicial distrust over the resulting confession.

(Citations omitted).

Counsel's explanation for not seeking to suppress the statements is twofold. When he entered the case, defendant had already given damaging statements to law enforcement officials, to the juvenile court while represented by counsel, and to the grand jury. Mr. Sylvester concluded he could not keep all of these statements out of evidence. Even if he had been successful in doing so, the statements, he felt, could be used to impeach defendant. *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971); *Washington v. Scurr*, 304 N.W.2d 231, 233 (Iowa 1981); *State v. Donelson*, 302 N.W.2d 125, 132 (Iowa 1981). He decided it would be less damaging to let the statements come in without objection rather than to have the State use them for impeachment. This strategy may have been ill-advised; certainly it was unsuccessful. It does not, however, brand counsel as ineffective.

We have reviewed all of the accusations made by defendant against trial counsel. It would serve no purpose to detail each of them. In virtually every instance, counsel explained his conduct as part of his trial strategy and as the product of his best professional judgment. This includes the complaints about the trajectory of the bullet, the extent to which the malfunction of the gun affected the defense, and the significance of the fact defendant is left-handed, a circumstance Mr. Sylvester allegedly failed to explore. Lawyers may differ on how to defend a murder case, particularly after a guilty verdict is in. We do not indulge in nice distinctions concerning tactics nor in condemning necessarily desperate decisions which backfire. *Hinkle v. State*, 290 N.W.2d 28, 30–31 (Iowa 1980); *Kellogg v. State*, 288 N.W.2d 561, 566 (Iowa 1980).

From our de novo review of the record, we hold defendant was not denied effective assistance of counsel. The matters involving alleged prosecutorial misconduct, although related to ineffectiveness of counsel, have been reserved for discussion in Division IV.

IV. *Prosecutorial Misconduct.*

■ Defendant alleges several areas in which he says prosecutorial misconduct occurred. In many instances error was not preserved. *See State v. Dahlstrom*, 224 N.W.2d 443, 449 (Iowa 1974). We nevertheless consider the arguments here because they inhere in the claim of ineffective counsel.

a. *Misconduct in Examining Witnesses.*

■ The prosecutor asked defendant if he was lying on the witness stand. Objec-

tion was made and sustained. The matter was dropped. We need not decide whether this inquiry was improper, because defendant does not claim prejudice. He is therefore not entitled to relief. *State v. Paulsen,* 286 N.W.2d 157, 161 (Iowa 1979); *State v. Fuhrmann,* 257 N.W.2d 619, 623 (Iowa 1977); *State v. Newman,* 257 N.W.2d 29, 31 (Iowa 1977); *State v. Hall,* 235 N.W.2d 702, 712 (Iowa 1975).

▇▇ Defendant also objects to the vigorous examination of both defendant and Rick Gnewuch concerning their activities on the night of the murder. The prosecutor tried to establish these young men had discussed, at defendant's suggestion, robbing a Conoco station that night because defendant "needed money." This was relevant on the issue of defendant's motive for entering the Homan house later.

▇▇ In Gnewuch's examination the prosecutor was impeaching his own witness by using a prior written statement, parts of which the young man had selectively admitted or denied as suited his purpose. This was permissible under the authority of *State v. Gilmore,* 259 N.W.2d 846, 852–53 (Iowa 1977).

We find no misconduct in these matters.

b. *Prejudicial Final Argument.*

▇▇ Defendant says the prosecutor's "civic duty" argument was improper and entitles him to a reversal. *State v. Trudo,* 253 N.W.2d 101, 106–07 (Iowa 1977); *State v. Monroe,* 236 N.W.2d 24, 30 (Iowa 1975).

The references here were perhaps objectionable, but they were not inflammatory. *Id.* The purpose of objecting is to give the trial court an opportunity to correct error and avoid possible prejudice. Here no objection was made; but that could easily be trial strategy. We should not permit a defendant to forego objection when possible error could be avoided and later use that same ground as a basis for reversal.

Defendant insists that the State's final argument was prejudicially unfair, that it misrepresented the record, that it appealed to the jury's self-interest, and that the prosecutor asserted his personal opinion of defendant's guilt.

▇▇ We start with the principle that counsel is permitted some latitude in analyzing the evidence. *State v. Pepples,* 250 N.W.2d 390, 396 (Iowa 1977); *State v. Fryer,* 243 N.W.2d 1, 7 (Iowa 1976). In doing so counsel may draw all permissible inferences reasonably flowing from the record. *State v. Conner,* 241 N.W.2d 447, 456 (Iowa 1976).

We do not find that the State's final argument exceeded the limits of propriety. The statements concerning the gun and the fingerprints were not made with the dogmatism that is ascribed to them. They can be more properly classified as inferences drawn from the evidence concerning those matters.

We find, too, that defendant overstates the portion of the argument concerning defendant's guilt. We do not believe the prosecutor was expressing a personal opinion of guilt; he was, rather, pointing out what he thought the evidence proved. He has a right to do this.

There are some minor discrepancies in the argument—in fact, in the arguments of both sides—and some conflict with the facts shown by the record. There always are, as lawyers seek to interpret what the witnesses said. None of these was significant and none rises to the level of misconduct.

V. *Conclusion.*

▇▇ We have considered all issues raised by defendant, whether specifically discussed or not. We find no merit in the objections to the instructions. The claim the trial court should have sua sponte intervened to avoid the errors now complained of is equally groundless. We reject, too, defendant's argument that the trial court unduly restricted his final argument.

We find defendant had a fair trial. The issues raised, neither separately or cumulatively, entitle him to a new one.

AFFIRMED.