**STATE of Iowa, Appellee,**

v.

**Finus Freemount ATWOOD, Appellant.**

**No. 69530.**

Supreme Court of Iowa.

Jan. 18, 1984.

James R. Talcott of Pryor, Riley, Jones and Aspelmeier, Burlington, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and William L. Dowell, Asst. County Atty. for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

LARSON, Justice.

Defendant Atwood was convicted of first degree murder. In this appeal, he claims reversible error on the following grounds: (1) statements in the prosecutor's closing argument violated Atwood's fifth amendment privilege against incrimination and due process rights, and (2) his counsel's failure to preserve error with regard to the prosecutor's closing argument constituted ineffective assistance.

Atwood claims certain remarks in the prosecutor's closing argument improperly drew attention to his failure to testify in violation of his fifth amendment rights.

*Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Johnson,* 257 Iowa 1052, 1055, 135 N.W.2d 518, 520–521 (1965).

The general rule is that issues, including constitutional issues, which are not raised in the trial court cannot be raised on appeal. *State v. Taylor,* 310 N.W.2d 174, 178 (Iowa 1981). No objections were made at trial in this case and therefore any objections as to improprieties have been waived. *Fryer v. State,* 325 N.W.2d 400, 412 (Iowa 1982); *State v. Johnson,* 272 N.W.2d 480, 483–484 (Iowa 1978).

We nevertheless consider the arguments here because they inhere in the claim of ineffective assistance of counsel. *State v. Schoelerman,* 315 N.W.2d 67, 71 (Iowa 1982); *State v. Mulder,* 313 N.W.2d 885, 891 (Iowa 1981).

Language to which Atwood objects is emphasized in these excerpts from the prosecutor's closing argument:

That the only conclusion that can be drawn is first degree murder. We talk about malice. We talk about malice being a state of mind, which leads one to intentionally do a wrongful act.

In my voir dire we talked about state of mind offenses. *That I can't crawl into Atwood's head and tell you what he was thinking at the time of the assault in the basement, prior that assault, or even at the time of the murder,* but I think you all agreed with me that based upon all the surrounding facts and circumstances you could draw the logical deductions and make the logical inferences based upon the evidence presented to you.

. . . .

Then I believe you will receive an instruction on the fact that intent is a mental state or emotion or condition of the mind which is seldom, if ever, capable of direct proof. I would like to refer you back to our voir dire examination, and we talked about the fact that *I can't crawl*

*into Atwood's head and have him speak to you directly,* but through everything he did, all the surrounding circumstances, all the surrounding facts, you can draw the reasonable deductions.

Atwood also cites portions of the closing argument where the prosecutor begins by saying he "didn't think [closing argument] would be quite this soon," where he analogized defense counsel's arguments to a "person who is playing cards, and one side gets dealt all the cards, and he doesn't have any, and he has still got to play the game," where he stated that it was undisputed that Atwood stabbed the victim, and where he reminded the jury that the others involved had admitted their guilt and that Atwood was a coward.

■ The remarks which Atwood claims infringed his right to remain silent, taken in context, are at most ambiguous and do not "naturally and necessarily" suggest Atwood's failure to testify. *State v. Taylor,* 336 N.W.2d 721, 727 (Iowa 1983). In fact, Atwood's testifying would not have allowed the prosecution, or the jury, to "crawl inside Atwood's head" at the time of the assault. The prosecution, perhaps through a poor choice of words, apparently sought to focus the jury's attention on the circumstantial evidence which it needed to establish malice aforethought and specific intent to kill. The comment on the timing of closing argument appeared to be as much an apology as anything else. The "cards" analogy sought to convince the jury that what the state saw as a weak case could not be helped by defense counsel's argument. Further, because it was undisputed that Atwood did the stabbing and his defense was one of provocation, that remark did not suggest that Atwood was withholding anything. Finally, others' admissions rebutted defense counsel's attack on their credibility and characterizing Atwood as a coward appeared to be, in context, part of the state's effort to show a motive for the stabbing. In sum, the prosecutor's remarks served legitimate purposes and did not naturally and necessarily focus jury attention on Atwood's silence.

We also note that defense counsel's references to "arguing from the state's evidence" in his own closing statement could also be said to be comments on Atwood's silence.

■ Atwood next asserts the prosecutor impermissibly injected his personal opinion of Atwood's guilt. *State v. Monroe,* 236 N.W.2d 24, 31 (Iowa 1975). The following passages from the closing argument are cited:

Mr. Wiegel [defense counsel] then also raised the question about Craig Bowerbank—his involvement and his culpability in this crime. I have a hypothesis for that too. Without Craig Bowerbank, [the victim] would still be dead. Without Craig Bowerbank, Atwood would have still killed [the victim].

. . . .

There is no legal excuse for what he did. [The victim] didn't assault him. [The victim] didn't come after him. He wasn't acting in self-defense.

. . . .

The only thing I can conclude from that is that the State of Iowa has done its job.

. . . .

I too was skeptical about Mr. Bowerbank. I was skeptical about his story that he only hit [the victim] a couple of times in the head and stood back and dropped the hammer, that he did it at Atwood's direction. I guess you could say I didn't even believe him, but then I talked to Dr. Zimmerman, and Dr. Zimmerman told me the same thing he told you yesterday—that he could find no evidence of a hammer wound to the head.

We agree with the state that in these instances the prosecutor was within his perogative of drawing all permissible inferences reasonably flowing from the record, *State v. Odem,* 322 N.W.2d 43, 47 (Iowa 1982); *State v. Mulder,* 313 N.W.2d 885, 892 (Iowa 1981), including the strength of the state's case. While the prosecutor ap-

parently went beyond the record when he told the jury of his conversation with Dr. Zimmerman, no ineffective-assistance claim is made on the basis of trial counsel's failure to object on that ground. Moreover, we do not believe the failure to object to this remark could result in prejudice sufficient to warrant a finding of ineffective assistance of counsel.

While objections to these remarks could have been sustained, they cannot be said to rise to the level of denial of a fair trial. *Mulder*, 313 N.W.2d at 892.

In the absence of objections, which would have given the trial court an opportunity to correct error and avoid any prejudice, and where a decision to object is arguably one of trial strategy and tactics, we will not second-guess trial counsel.

Our finding that the prosecutor's remarks were not prejudicial effectively precludes any claim of ineffective assistance of counsel, and the present record is thus adequate for disposition of the effectiveness issue. *State v. Ogilvie*, 310 N.W.2d 192, 197 (Iowa 1981). In *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981), we found that when an ineffective counsel claim is grounded upon an act or failure to take some action, the claimant must demonstrate that prejudice resulted. Atwood's counsel was not ineffective for failing to make questionable objection. *See State v. Combs*, 316 N.W.2d 880, 882 (Iowa 1982). *See also State v. Hrbek*, 336 N.W.2d 431, 436–437 (Iowa 1983).

We also note that the decision whether or not to object at these points appeared to be in the nature of "trial tactics, strategies, or other judgment calls," which we will not second-guess. *Sallis v. Rhoads*, 325 N.W.2d 121, 123 (Iowa 1982). *See also Fryer v. State*, 325 N.W.2d 400, 414–415 (Iowa 1982).

AFFIRMED.