STATE of Iowa, Plaintiff–Appellee,

v.

Jerry JOHNSON, a/k/a Michael Eugene Cartwright, Jr., Defendant–Appellant.

No. 94–469.

Court of Appeals of Iowa.

May 30, 1995.

Barbara J. Diment of Diment Law Office, West Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., John P. Sarcone, County Atty., and Daniel Vogt, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.

CADY, Judge.

Michael Cartwright appeals from his conviction of terrorism without intent to injure or provoke fear in violation of Iowa Code section 708.6 (Supp.1993). Upon our review of the evidence, we affirm his conviction.

In the early morning hours of May 25, 1993, Robert Hawthorne was driving his car on University Avenue when he noticed a Cadillac coming toward him. The Cadillac made a U-turn and started to follow him. After trying to lose the Cadillac, Hawthorne stopped his car and started to get out to see what the car wanted. As he opened his door a shot was fired from the Cadillac shattering his rear window. Hawthorne drove away and a second shot was fired. He called the police from his car phone and turned his car around to face the Cadillac. Hawthorne pursued the Cadillac and informed the police of his location.

The police spotted the Cadillac on Interstate 235 and followed it as it exited onto Keosauqua Avenue. Police Officer Kees shone his spotlight on the car and observed three black males inside. Kees also observed the Cadillac slow and the front passenger door open. The car then sped up again. The Cadillac finally stopped and the three occupants were arrested. Cartwright had been sitting in the front passenger seat and he was wearing a white baseball cap. Police found a .44 magnum on the street where the car had slowed and the passenger door had opened.

Cartwright was charged with terrorism with the intent to injure or provoke fear. At his jury trial Hawthorne testified that at least some of the shots had come from the passenger side of the Cadillac and he was sure that a person wearing a white hat fired the last two shots. Police Officer Seybert testified that he had observed gunpowder residue on a pillar of the Cadillac between the front passenger door and windshield. A criminologist with the Iowa Division of Criminal Investigation testified that he tested the Cadillac's three passengers' hands for gunshot residue. He was unable to determine whether any of the passengers had recently fired a gun.

The district court overruled Cartwright's motions for a directed verdict. The court submitted instructions to the jury on terrorism with intent to injure or provoke fear, terrorism without intent to injure or provoke fear, and assault. The court also gave the jury instructions on aiding and abetting and participation in a public offense. Cartwright requested the court to give the jury an instruction on its theory of defense—accessory after the fact. The court denied Cartwright's request finding it "brings into play a crime, a different crime, which has not been charged and is not part of this trial...."

The jury found Cartwright guilty of terrorism without intent to injure or provoke fear. It answered a special interrogatory that Cartwright or someone he aided and abetted had a firearm, displayed a firearm in a threatening manner, or was armed with a firearm.

Cartwright's motions in arrest of judgment and for new trial were denied. The court sentenced Cartwright to a minimum term of five years for his conviction of terrorism without intent.[1]

Cartwright appeals. He argues (1) the evidence was insufficient to support his conviction; (2) the court erred in instructing the jury on aiding and abetting in relation to the lesser offense of terrorism without intent and on participation in a public offense; (3) the court erred in refusing to give the jury an instruction on his theory of defense—accessory after the fact; (4) the court erred in finding the offense of terrorism without intent was a forcible felony and in submitting the special interrogatory regarding firearms on this offense; (5) he was prejudiced by prosecutorial misconduct; and (6) his trial counsel was ineffective for failing to request that the jury be admonished to disregard his appearance in jail clothing at trial, failing to object to certain instructions, failing to offer into evidence a stipulation on the co-defendant's plea of guilty, and offering a theory of

---

1. Iowa Code § 902.7 (1993) states, if defendant is found to be in the possession or control of a firearm while participating in a forcible felony defendant shall serve a minimum of five years of the sentence imposed by law.

defense that was actually adverse to Cartwright.

## I. Sufficiency of the Evidence

■ Our review is for errors at law. Iowa R.App. 4. We are bound by the jury's verdict unless there was not substantial evidence to support it. *State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994). In determining whether there was substantial evidence, we review the record in the light most favorable to the state. *Id.* Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Taft*, 506 N.W.2d 757, 762 (Iowa 1993). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). "However, whether the evidence is direct or circumstantial, it must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Hamilton*, 309 N.W.2d 471, 479 (Iowa 1981) (citing *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981)).

Iowa Code section 708.6 defines terrorism without intent to "injure or provoke fear or anger" as follows:

A person commits a class "D" felony when the person shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.

■ The State relied on the theory of aiding and abetting to prove the terrorism count against Cartwright. To convict an individual of a crime on an aiding and abetting theory, the State must produce substantial evidence that the individual "assented to or lent countenance and approval to the criminal act either by active participation in it or by some manner encouraging it prior to or at the time of its commission." *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977). Knowledge of the criminal act at or before its commission is essential. *State v. Buttolph*, 204 N.W.2d 824, 825 (Iowa 1972). This knowledge may be inferred from circumstances surrounding the act. *Id.*

■ Cartwright asserts there is insufficient evidence to convict him as an aider and abettor. In support of his contention, he argues the scientific evidence was inconclusive, Hawthorne's testimony was not credible, and the principal was not clearly identified. Cartwright is correct that the gun residue tests performed on the three occupants of the car were inconclusive. It is also true, that Hawthorne's testimony regarding the side of the car from which the shots were fired was somewhat inconsistent.

We, nevertheless, conclude there was substantial evidence from which the jury could conclude Cartwright aided and abetted the shooting. It is undisputed shots were fired from the Cadillac in which Cartwright was riding into Hawthorne's car. There was also a smudge of gunpowder residue on the structural pillar between the front passenger door and the windshield of the Cadillac. Hawthorne testified that a person wearing a white hat was leaning out of the passenger side of the car and shooting. Additionally, while the police were following the Cadillac, it slowed down and the passenger door opened. When the police returned to the location where the Cadillac had slowed down, they found a .44 magnum revolver. Finally, when the police stopped the Cadillac, shortly after it had slowed down, Cartwright was sitting in the front passenger seat and was the only occupant of the car wearing a white hat.

Knowledge and proximity to the scene combined with circumstantial evidence such as companionship, and conduct before and after the offense is committed may be sufficient to infer a defendant's participation in the crime. *Lewis*, 514 N.W.2d at 63. The district court did not err in denying Cartwright's motions for judgment of acquittal.

## II. Jury Instructions

Cartwright asserts several errors in the jury instructions. First, he claims the trial court erred in instructing the jury on aiding and abetting in relation to the terrorism without intent charge. Next, he claims under the facts of this case, the court should

not have submitted a uniform instruction on participation in a public offense. Finally, he asserts the court erred in excluding Cartwright's requested instruction on accessory after the fact.

After reviewing Cartwright's first two assertions of error, we conclude he failed to preserve them for appellate review. We will, however, consider them under his ineffective assistance of counsel claim.

Cartwright properly preserved error as to the accessory after the fact instruction. He argues the court erred in failing to grant his requested instruction on accessory after the fact as a theory of defense. His proposed jury instruction is as follows:

> Evidence has been received alleging that the defendant attempted to dispose of the revolver while being pursued by law enforcement. A person who has knowledge that a public offense has been committed by another person and who aids the person who committed the offense with intent to prevent apprehension is an accessory after the fact.

> If the state has failed to prove beyond a reasonable doubt that the defendant discharged the revolver or aided and abetted its discharge but that the defendant acted as an accessory after the fact, then you shall find the defendant not guilty.

The trial court has a duty to instruct the jury on all material issues raised by the evidence. *State v. Broughton*, 425 N.W.2d 48, 51 (Iowa 1988). The instructions should state the applicable rule of law, and are not intended to marshal the evidence or give undue prominence to certain evidence involved in the case. *State v. Marsh*, 392 N.W.2d 132, 133 (Iowa 1986).

A defendant is ordinarily entitled to a theory of defense instruction if he or she makes a timely request, the request is supported by evidence, and the request sets out a correct declaration of the law. *United States v. Brake*, 596 F.2d 337, 339 (8th Cir. 1979). To the extent a court is required to give a theory of defense instruction, however, the requested instruction must set forth facts which would be incompatible with one or more essential elements of the crime charged. *Conner v. State*, 362 N.W.2d 449, 453 (Iowa 1985); *State v. Kase*, 344 N.W.2d 223, 226 (Iowa 1984).

Cartwright's requested instruction was not a proper theory of defense instruction. First, the State did not charge Cartwright with accessory after the fact. Thus, his requested instruction stated an inapplicable rule of law. Second, Cartwright's instruction does not set forth facts precluding a finding of guilt. Even if the jury found Cartwright's only action was disposing of the gun, sufficient evidence remains from which the jury might conclude Cartwright aided and abetted the shooting. Finally, the court's instruction on aiding and abetting adequately encompassed Cartwright's theory of the defense—that his actions were insufficient to support a conviction for aiding and abetting terrorism. *See State v. Freeman*, 267 N.W.2d 69, 70–71 (Iowa 1978) (stating there is no error in denying an instruction where the substance of the instruction is included in another instruction).

### III. Forcible Felony Statute

Cartwright asserts the district court erred in submitting the firearm instruction with respect to the terrorism without intent to injure or provoke fear charge and in sentencing him under the forcible felony statute. Cartwright's claims both turn on whether terrorism without intent to injure or provoke fear is a forcible felony.

Terrorism without intent to provoke injury or fear is a new statute and we have not previously determined whether it is a forcible felony. Our supreme court has stated forcible felonies encompass any felony which necessarily includes an assault. *State v. Vavrik*, 336 N.W.2d 193, 194 (Iowa 1983). It has also held terrorism with intent to injure or provoke fear is a forcible felony if one shoots, throws, launches, or discharges a dangerous weapon, but is not a forcible felony if one only threatens these acts. *Id.*

The question we are confronted with in this case is whether terrorism without intent to provoke fear or injury necessarily includes

an assault.[2] Cartwright argues terrorism without intent does not necessarily include the intent required to commit an assault and cannot, therefore, constitute felonious assault. We disagree.

 A greater offense necessarily includes a lesser one if the lesser offense is composed solely of some but not all elements of the greater crime, and if it is impossible to commit the greater offense without committing the lesser. *State v. Webb*, 313 N.W.2d 550, 552 (Iowa 1981). The essential elements of the offenses being compared are established by the statutes. *Id.*

 Assault is a general intent crime. *State v. Brown*, 376 N.W.2d 910, 914 (Iowa App.1985). It is defined in pertinent part as:

1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

. . . .

Iowa Code section 708.1 (1993).

Terrorism "without intent to injure or provoke fear" is also a general intent statute.[3] Comparing each of the elements in the terrorism and assault statutes, we conclude it is impossible to shoot, throw, launch, or discharge a dangerous weapon into an occupied vehicle or building or an assembly of people, and place the occupants in reasonable apprehension of serious injury without simultaneously committing an assault.

Accordingly, the district court did not err in applying the firearm instruction to the lesser included offense of terrorism, and sentencing Cartwright under the forcible felony statute.

## IV. Ineffective Assistance of Counsel

Cartwright asserts five instances of ineffective assistance of counsel. He claims trial counsel was ineffective for: (1) failing to request the jury be admonished to disregard Cartwright's appearance in jail clothing; (2) failing to offer into evidence a stipulation on the co-defendant's plea; (3) failing to timely object to the submission of certain jury instructions; (4) arguing a theory of the defense adverse to Cartwright; (5) failing to timely object to the alleged improper statements made by the prosecutor in closing argument.

 Generally, ineffective assistance of counsel claims are preserved for postconviction proceedings to allow trial counsel an opportunity to defend the charge. *State v. Mulder*, 313 N.W.2d 885, 890 (Iowa 1981), *cert. denied*, 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982). Where the record on direct appeal is adequate we will resolve the issue.

 We approach ineffectiveness claims with the presumption that counsel performed competently. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). To establish an ineffectiveness claim the petitioner must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Hrbek*, 336 N.W.2d 431, 436 (Iowa 1983). Petitioner must satisfy this burden by a preponderance of all the evidence. *State v. Kraus*, 397 N.W.2d 671, 673 (Iowa 1986).

### A. Prison Clothing

 On the morning of trial Cartwright appeared in prison clothing with "Polk County Jail" printed on the back. Defense counsel declined to move for a continuance but requested the court to admonish the jury not to consider Cartwright's apparel. The court agreed to instruct the jury as requested, but failed to do so. The jury was selected and opening statements were given. The court then recessed for lunch. After the break, the court acknowledged its error and asked if defense counsel still wanted a jury admoni-

---

2. The trial information did not charge Cartwright with the "threatens" provision of the terrorism statute.

3. See discussion *infra* part V.C.

tion. The court suggested it might no longer be necessary because Cartwright had received civilian clothing and the admonition might call undue attention to the fact he had earlier worn prison clothing. Defense counsel agreed that the admonition was no longer necessary and none was given.

 Defendants are entitled to the indicia of innocence in the presence of the jury. *State v. Wilson,* 406 N.W.2d 442, 448 (Iowa 1987). The state cannot compel a defendant to stand trial in identifiable prison clothing. *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976). Requiring a defendant to appear in prison clothing creates an unacceptable risk the jury may consciously or subconsciously be influenced in their deliberations. *Id.* at 504–05, 96 S.Ct. at 1693, 48 L.Ed.2d at 131. The practice is, therefore, inherently prejudicial. *See Wilson,* 406 N.W.2d at 449 (citation omitted). Conversely, a defendant may elect to wear prison clothing, and cannot later claim prejudice. *Estelle,* 425 U.S. at 507–08, 96 S.Ct. at 1694–95, 48 L.Ed.2d at 132–33.

 Under the circumstances of this case, we conclude Cartwright waived his right to appear in civilian clothing and no prejudice resulted from defense counsel's tactical choice to forego the jury admonition after opening arguments. Initially, when Cartwright's civilian clothing had not arrived, counsel, in Cartwright's presence, informed the court Cartwright did not want a continuance. He then appropriately requested the court to admonish the jury regarding Cartwright's appearance. After the court failed to give the promised admonition and Cartwright's clothing arrived, counsel made a strategic decision not to have the court instruct the jury. As indicated by the record, this decision was based on concern that the instruction might call undue attention to Cartwright's earlier appearance in prison clothing. As we have previously held, improvident trial strategy or a mistake in judgment does not necessarily amount to ineffective assistance of counsel. *Thompson v. State,* 492 N.W.2d 410, 413 (Iowa 1992); *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982).

## B. Plea of Co-defendant

 Cartwright asserts trial counsel was ineffective for failing to timely offer evidence regarding a co-defendant's plea of guilty. We find no prejudice resulted from counsel's belated offer of proof. The State objected to the admissibility of the evidence and the court ruled it was irrelevant. Even if counsel had timely offered the evidence, it would not have been admitted. *See State v. Cermak,* 365 N.W.2d 243, 247 (Minn.1985) (holding evidence of a plea of guilty, conviction, or acquittal of an accomplice of accused is not admissible to prove guilt or lack of guilt of the accused).

## C. Jury Instructions

 Cartwright complains of trial counsel's failure to object to jury instruction 17 regarding aiding and abetting and jury instruction 18 on participation in a public offense. We conclude both of these instructions were proper and counsel did not err in failing to object to them.

 Cartwright argues the new terrorism statute is a strict liability statute and as a fundamental principle one cannot aid and abet a strict liability crime. He therefore, asserts the court erred in submitting the instruction.

 Cartwright's argument misperceives the mens rea element of the statute. Generally criminal intent is an essential element of an offense. *State v. Ramos,* 260 Iowa 590, 595, 149 N.W.2d 862, 865 (1967). The legislature may only eliminate the intent or knowledge element within certain parameters, and legislative intent to eliminate guilty knowledge should be clearly apparent. *State v. Schultz,* 242 Iowa 1328, 1331, 50 N.W.2d 9, 11 (1951).

 Whether criminal intent or guilty knowledge is an essential element of a statutory offense may be "determined as a matter of construction from the language of the act, in connection with its manifest purpose and design." *State v. Conner,* 292 N.W.2d 682, 685 (Iowa 1980). Applying this rule our supreme court has frequently implied a crimi-

nal intent element, although none appeared on the face of the statute. *Id.*

In this case, we conclude the language of the act implies a general criminal intent. The language of the act gives no indication the legislature intended to remove the criminal intent element and create a strict liability offense.

■ We also find Cartwright's assertion of error regarding the participation in a public offense instruction meritless. The instruction simply defines the term "participation in a public offense." The definition mirrors the uniform jury instructions and the statutory definition at Iowa Code section 702.13 (1993). We are reluctant to disapprove Uniform Instructions. *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981).

## D. Adverse Theory of Defense

■ Cartwright claims counsel made a fatal error in arguing a plausible theory of the defense which was adverse to him in light of the court's instructions. After reviewing counsel's closing argument, we conclude his theory did not prejudice Cartwright's interests. Counsel made a strategic decision to admit Cartwright may have dumped the gun at the last minute, but had no other involvement. Dumping the gun did not automatically make Cartwright guilty of aiding and abetting. The jury was still required to find Cartwright had knowledge of the criminal act and approved of it. Also, given the factual circumstances in this case, there were few plausible defenses. We conclude counsel made a reasonable decision concerning strategy, and we will not interfere simply because the strategy was unsuccessful. *State v. Losee*, 354 N.W.2d 239, 243 (Iowa 1984).

## E. Prosecutorial Misconduct

Cartwright asserts counsel was ineffective in failing to object to two statements made by the prosecutor in his closing argument. Error was not preserved on these issues. We nevertheless consider the arguments here because they inhere in his claim for ineffective assistance of counsel. *See State v. Mulder*, 313 N.W.2d 885, 891 (Iowa 1981),

*cert. denied,* 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982).

■ In reviewing claims of prosecutorial misconduct, we must determine whether the claimed improper argument was so prejudicial to the defendant that he was denied a fair trial. *State v. Trudo*, 253 N.W.2d 101, 106 (Iowa), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977); *State v. Monroe*, 236 N.W.2d 24, 29 (Iowa 1975). Not all conduct entitles a defendant to a new trial. *Id.*

Cartwright asserts the first error occurred when the State used the term "accessory after the fact" to refer to Cartwright's theory of defense. The court had earlier refused to admit Cartwright's exhibit on accessory after the fact and later refused a jury instruction on the theory.

■ In closing argument, it is improper to comment on matters previously stricken from the record. *State v. Mayes*, 286 N.W.2d 387, 392 (Iowa 1979). Notwithstanding, we do not believe the prosecutor's use of the term "accessory after the fact" prejudiced Cartwright to such an extent that a new trial is warranted.

■ Cartwright's next claim of misconduct causes greater concern. In closing the prosecutor made the following remarks:

> And ladies and gentlemen, on behalf of the State, I don't want you to find this defendant guilty because it involves something that could be called a drive-by shooting. The State doesn't ask you to render a verdict to try to cure the social ills of a community.

> But if you look at the evidence and you return a just verdict in this case, you will, as a result, send a message that says, "We're not going to have this Dodge City stuff. No shooting in our neighborhoods. No shooting in the street. We don't want these bullets coming through our houses or zinging past people on the street. That's not okay."

Cartwright asserts the remarks were improper and his counsel had a duty to object. We agree.

■ The prosecutor's comments improperly urge the jurors to convict the defendant in order to protect community values and prevent further criminal activity. They were an improper emotional appeal designed to persuade the jury to decide the case on issues other than the facts before it. *See United States v. Johnson,* 968 F.2d 768, 770–71 (8th Cir.1992).

■ Having determined the conduct was improper and defense counsel should have objected, we must decide whether Cartwright was prejudiced by defense counsel's error. This requires Cartwright to demonstrate counsel's failure worked to his actual and substantial disadvantage so that a reasonable possibility exists that but for counsel's error the trial result would have been different. *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994).

Although we condemn the prosecutor's remarks, we conclude they were not so prejudicial that but for counsel's failure to object the trial result would have been different. The prosecutor did not repeatedly appeal to the jurors community interests. His remarks were limited to a few sentences in his rebuttal argument. He was also, in part, responding to defense counsel's admonition to the jury not to be swayed by a "desire to cure social ills."

Additionally, when the evidence of guilt is strong, it is less likely a prosecutor's improper argument will affect the jury verdict. *Johnson,* 968 F.2d at 771–72. In this case, the evidence of aiding and abetting was compelling. Cartwright was riding in the Cadillac when gun shots were fired from it. Hawthorne identified a person wearing a white hat as the shooter. Cartwright was the only occupant of the car wearing a white hat. Gunpowder smudges were found on the pillar between the front passenger door and the windshield of the car. The gun was dropped out of the passenger side of the car, and Cartwright was riding in the passenger seat when the police stopped the car. Thus, we conclude defense counsel's failure to object to the prosecutor's closing comments was not prejudicial.

**AFFIRMED.**

DONIELSON, C.J., concurs.

HAYDEN, J., specially concurs.

HAYDEN, Judge (concurring specially).

I concur in the result.