# IN THE COURT OF APPEALS OF IOWA

No. 22-0556
Filed August 30, 2023

**ANDREW RUDOLPH WULF,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Davis County, Crystal S. Cronk, Judge.

 Andrew Wulf appeals the denial of his postconviction-relief application. **AFFIRMED.**

 Jessica Donels of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

 Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

 Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

A jury convicted Andrew Wulf of ongoing criminal conduct and two counts of theft for his actions related to his hunting outfitter business. This court affirmed his convictions on direct appeal. *See generally State v. Wulf*, No. 18-0398, 2019 WL 720469 (Iowa Ct. App. Feb. 20, 2019). Wulf sought postconviction relief (PCR), raising a number of ineffective-assistance-of-counsel claims, which the PCR court rejected. Wulf appeals.

I.      **Background Facts**

On direct appeal, we summarized the facts relating to Wulf's criminal convictions as follows:

> Wulf owned and operated Whitetail Ridge Outfitters, LLC (WRO), which provided guided hunts for hunters. . . .
> In May 2016, Paul Rademaker entered into an agreement with WRO for a ten-day fully guided hunt in Iowa and Missouri beginning December 27, 2016, for $5000. Wulf paid for Rademaker's lodging at a motel in Bloomfield but only provided three or four meals, rather than the thirty meals Rademaker expected to receive. Also, Wulf never took Rademaker to any hunting locations. Wulf provided Rademaker with an electronic map with a pin on it and told Rademaker to go to the location himself. Rademaker's Iowa hunting license was only valid in Zone 6, but one of the locations Wulf sent to Rademaker was in Zone 5, where it was illegal for Rademaker to hunt. No locations were in Missouri. Wulf did not provide Rademaker with any other guide services. After a few days, Rademaker contacted another outfitter who took him to hunting locations, provided blinds and tree stands, and information from trail cameras. Rademaker did not receive a refund from Wulf.
> John Granberg entered into an agreement with WRO for a five-day fully guided hunt in Iowa, beginning December 27, 2016, for which he paid $2750. Wulf told Granberg to check in at the Bloomfield motel, where Wulf had paid for Granberg's lodging. Granberg wanted to go hunting that day. He exchanged calls and texts with Wulf, but Wulf never appeared to take him hunting. Granberg decided to leave Bloomfield. He went to another town and lined up another outfitter. Granberg asked Wulf for a refund but never got any money back.

In May 2016, Randall McMillan entered into a contract with WRO for a five-day fully guided hunt in Iowa in December 2016 and paid a deposit of $1250. Under the terms of the contract, McMillan would be refunded his deposit if he did not receive a nonresident antlered deer-hunting license. McMillan did not receive a nonresident antlered deer-hunting license in the drawing. Wulf did not give McMillan a refund for his deposit.

*Id.* at *1 (footnote omitted).

The criminal trial included testimony from several people relevant to Wulf's PCR claims. Davis County Sheriff's Deputy Joshua O'Dell, the primary investigator in the case, testified about his investigation. That testimony included repeating statements Rademaker, Granberg, and McMillan made to him during the investigation. During trial, the prosecutor questioned O'Dell about the details of his investigation, including whether he ever questioned Wulf. O'Dell explained that, although he attempted to question Wulf, Wulf never spoke with him.

Game Warden Matt Rush testified at trial that he received reports from hunters complaining about Wulf's services, though he did not identify the complaining hunters. Conservation Officer Bob Stuchel testified that he was still investigating allegations of hunting violations by Wulf.

Wulf's landlord testified that Wulf's rent check bounced. Wulf's former employee explained he had a difficult time getting paid by Wulf and decided it was too much effort to continue to work for Wulf. A motel manager who would sometimes rent rooms to hunters for Wulf's business noted the payment provided by Wulf was sometimes denied and Wulf would need to provide a different credit card number to pay for the room rentals.

Rademaker, Granberg, and McMillan also testified about their experiences contracting with Wulf for hunting expeditions. Rademaker explained that he found

negative reviews of Wulf's business online. Likewise, Granberg testified he conducted a Google search of Wulf's name and discovered negative reviews about Wulf and his business.

Any additional facts will be provided as necessary.

## II. Discussion

PCR proceedings are ordinarily reviewed for legal error. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But when the PCR applicant claims trial counsel provided ineffective assistance, which raises a constitutional issue, our review is de novo. *Id.* With de novo review, "'we give weight to the lower court's findings concerning witness credibility[,]' [b]ut we are not bound by the lower court's determination." *Id.* (internal citation omitted).

To establish an ineffective-assistance-of-counsel claim, the applicant must establish both (1) counsel failed to perform an essential duty; and (2) that failure resulted in prejudice. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). "Both elements must be proven by a preponderance of the evidence." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). If an applicant fails to establish either element the claim fails, and we need not address the other element. *Dempsey*, 860 N.W.2d at 868; *see also Sothman*, 967 N.W.2d at 522 ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." (citation omitted)).

The first element is satisfied when the applicant demonstrates counsel breached an essential duty by making "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *State v. Warren*, 955 N.W.2d 848, 859 (Iowa 2021) (citation

omitted). "We presume counsel acted competently[,] but that presumption is overcome 'if we find [an applicant] has proved [trial] counsel's performance fell below the normal range of competency.'" *Sothman*, 967 N.W.2d at 522 (citation omitted). "[C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention . . . ." *Ledezma*, 626 N.W.2d at 143. "While strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* (citation omitted). And of course, "[t]rial counsel is not incompetent in failing to pursue a meritless issue." *State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa 1998).

As to the second element, "constitutional prejudice, the defendant is required to show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "It is not enough for the defendant to show that the errors had [only] some . . . effect on the outcome of the proceeding." *Id.* (alterations in original) (citation omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### A. Confrontation Clause and Hearsay Objections

Wulf brings a series of claims asserting trial counsel was ineffective for failing to raise Confrontation Clause and hearsay objections to testimony from various witnesses. As these are distinct claims, we will address them separately.

### 1. Confrontation Clause

"The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *State v. Musser*, 721 N.W.2d 734, 753 (Iowa 2006) (alterations in original) (quoting U.S. Const. amend. VI). "An out-of-court statement by a witness that is testimonial in nature is barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Id.* However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). And "[n]ontestimonial statements are not subject to scrutiny under the Confrontation Clause." *Musser*, 721 N.W.2d at 753.

With these principals in mind, we turn to Wulf's claims that trial counsel was ineffective for failing to object to testimony as violating his right to confrontation. Wulf claims Deputy O'Dell's testimony about what Rademaker, Granberg, and McMillan told him during his investigation amounted to a Confrontation Clause violation. We disagree. All three men testified and were subject to cross-examination at trial. So, the Confrontation Clause was not violated by Deputy O'Dell's testimony, and counsel was not ineffective for not objecting on this ground. *See Crawford*, 541 U.S. at 59 n.9 (holding introduction of a testimonial statement

does not violate the Confrontation Clause when the declarant appears for cross-examination at trial).

Next, Wulf claims Game Warden Rush's testimony that he "received several calls from hunters that were from out of state, from various different states, lodging complaints against Mr. Wulf for not providing the services that they had hired him for" amounted to a Confrontation Clause violation. The State points out that, to the extent these complaints came from Rademaker, Granberg, and McMillan, no Confrontation Clause violation occurred because all three testified and were thus subject to cross-examination. But even assuming Rush's testimony included repeating testimonial statements made by non-witnesses in violation of the Confrontation Clause and warranted an objection, Wulf has not established prejudice. The testimony was a passing reference in a three-day trial. Its exclusion was unlikely to change the outcome of the trial, and its inclusion does not undermine our confidence in Wulf's convictions. Wulf is not entitled to relief on this basis.

Finally, Wulf complains that Granberg's references to reading different internet posts about Wulf and his business violated the Confrontation Clause. Wulf's claim fails for two reasons. First, we note Wulf develops no Confrontation Clause argument beyond his passing reference in an issue heading, waiving the claim. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (finding perfunctory mention of an issue without elaboration or supporting authority waives the claim); *State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (holding random mention of an issue, without elaboration or supporting authority, is insufficient to raise the issue for appellate court's

consideration). Second, none of the original posters' internet statements qualify as testimonial. *See Michigan v. Bryant*, 562 U.S. 344, 358 (2011) (noting that whether an out-of-court statement is testimonial is measured by its "primary purpose," and specifically whether it was intended as "an out-of-court substitute for trial testimony"); *Lee-Purvis v. Pennsylvania*, 314 F. Supp. 3d 665, 678 (E.D. Pa. 2018) (finding no Confrontation Clause violation for admitting Facebook posts because there was no indication that the primary purpose of the posts "was to memorialize an out-of-court substitute for trial testimony"); *Turkot v. State*, No. 2814, 2017 WL 2687764, at *18–19 (Md. Ct. Spec. App. June 22, 2017) (finding statements posted on Facebook Messenger are not testimonial because they were not intended as "an out-of-court substitute for trial testimony" (quoting *Bryant*, 562 U.S. at 358)). As such, Granberg's reference to the posts did not violate the Confrontation Clause, so counsel had no duty to object on Confrontation Clause grounds.

### 2. Hearsay

Next, we address Wulf's claims that counsel was ineffective for failing to object to certain testimony as violating the rule against hearsay. Hearsay is an out-of-court statement offered "into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c)(2). Hearsay is not admissible at trial unless an exception applies. *See* Iowa R. Evid. 5.802. However, "[a]n out-of-court statement offered only to explain responsive conduct that is relevant to an aspect of the [S]tate's case is not offered to prove the truth of the matter asserted and is therefore not hearsay." *State v. Plain*, 898 N.W.2d. 801, 812 (Iowa 2017).

As he did in his direct appeal, Wulf complains about Deputy O'Dell's testimony. Here he contends that O'Dell's testimony about what Rademaker, Granberg, and McMillan told him constituted hearsay.[1] But O'Dell didn't testify about anything Rademaker, Granberg, and McMillan said that the three didn't also say themselves when they testified. So even if O'Dell's testimony included hearsay, it was cumulative of other properly admitted testimony, and its exclusion would not have impacted the outcome of the trial. *See State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) ("[W]e have held that notwithstanding the presumption of prejudice from the admission of [hearsay] evidence, the erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record."). Accordingly, Wulf cannot establish prejudice, and he is not entitled to relief on this basis.

Wulf also claims Game Warden Rush's statements about what he learned from complaining hunters amounted to hearsay and trial counsel was ineffective for failing to object. Our review of this part of Rush's testimony reveals it was given to explain his responsive conduct—why he contacted O'Dell in the first place— rather than for the truth of the matter asserted. As such, it was not hearsay. To the extent his testimony went beyond explaining his responsive conduct, it was duplicative of other evidence that was properly admitted through testimony from Rademaker, Granberg, and McMillan as well as text message exhibits. So, again, even if counsel had objected and the testimony was excluded as hearsay, the jury

---

[1] To the extent Wulf attempts to challenge certain portions of O'Dell's testimony about Rademaker's statements as hearsay and claims counsel was ineffective for failing to object, we already found the statements were not hearsay and counsel had no duty to object on direct appeal. *See Wulf*, 2019 WL 720469, at *5.

still would have learned the same information from other sources. So Wulf cannot establish prejudice and is not entitled to relief. *See id.*

Next, Wulf argues counsel was ineffective for not objecting to testimony from Rademaker as hearsay. We already addressed a portion of the challenged testimony on direct appeal and determined it was not hearsay because it explained his responsive conduct. *Wulf*, 2019 WL 720469, at *5. So as to the previously addressed portion of Rademaker's testimony, Wulf's claim is barred by issue preclusion. *See Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 587 (Iowa 2019) (defining issue preclusion). As to the remaining challenged portion of Rademaker's testimony—in which Rademaker explained he went through negative online reviews of Wulf, grew concerned, and decided to confront Wulf via text message—we again conclude the testimony was not given to prove the truth of the matter asserted. First, Rademaker didn't even provide specific details about the online reviews other than noting they were "[q]uite negative," and second, that minor detail was necessary for Rademaker to explain why he confronted Wulf. It provided necessary context for Rademaker's responsive conduct. It is not hearsay, and counsel had no duty to object to it.

Likewise, Wulf claims that Granberg's testimony about conducting a Google search about Wulf and coming across stories similar to his experiences with Wulf and Wulf's business amounted to hearsay to which counsel should have objected. Again, our review of the testimony shows it was not offered to prove the truth of the Google search results, which were never presented to the jury, but to explain

Granberg's responsive conduct. The testimony was not hearsay, and counsel had no duty to object.[2]

## B.    Prosecutorial Misconduct

Wulf's next set of claims allege trial counsel was ineffective for failing to object to various instances of prosecutorial misconduct. Prosecutorial misconduct occurs when the prosecutor acts with reckless disregard of the duty to ensure the defendant has a fair trial in compliance with the requirements of due process or intentionally makes statements in violation of an obvious obligation, legal standard, or applicable rule that goes beyond an exercise of poor judgment. *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018).

### 1.    Right to Remain Silent

First, Wulf claims the prosecutor committed misconduct by eliciting testimony from Deputy O'Dell regarding Wulf's decision to remain silent in violation of his Fifth and Sixth Amendment rights through the following exchange:

> Q. . . . [D]id you talk to Mr. Wulf?  A. I attempted to.  I went to the residence . . . in an attempt to make contact with him.  I was never able to find him there.  Also, after we filed the warrants and he was arrested, I did meet with Mr. Wulf at the Davis County Jail, *Mirandized* him, and asked to speak with him, and he chose not to.
> Q. When he chose not to speak with you, did you ever— besides being—working at the jail, did you ever talk to Wulf again about this case?  A. No, sir, not outside, never about the case, just jail issues.
> Q. Did Mr. Wulf at any time ever tell you that he had this contract?  A. No, sir, he never told me anything.

---

[2] Our conclusion that the challenged testimony of Rush, Rademaker, and Granberg was not hearsay is consistent with the decision reached in Wulf's direct appeal, where we held that a similar class of testimony was not hearsay because it was offered to prove responsive conduct rather than for the truth of the matter asserted. *See Wulf*, 2019 WL 720469, at *5

Testimony commenting on a defendant's decision to invoke the right to remain silent is not admissible. *State v. Porter*, 283 N.W.2d 351, 352–53 (Iowa 1979). But Wulf is not contending counsel was ineffective for failing to object to the testimony itself. Instead, he frames his ineffective-assistance-of-counsel claim based on counsel's failure to object to prosecutorial misconduct, meaning he must show the prosecutor acted with reckless disregard of a duty or intentionally elicited the prohibited testimony, *see Coleman*, 907 N.W.2d at 139, counsel breached a duty for failing to object, and that breach resulted in constitutional prejudice, *see Ledezma*, 626 N.W.2d at 142. However, as the State points out, Wulf has not established that the prosecutor acted with reckless disregard of a duty or intentionally sought out testimony about Wulf's constitutionally protected post-arrest silence. So he cannot establish a would-be claim of prosecutorial misconduct to which defense counsel should have objected. As a result, Wulf is not entitled to relief on this ground.

### 2. Closing Arguments

Next, Wulf claims the prosecutor committed misconduct by "asking the jury to send a message" during closing arguments and counsel was ineffective for not objecting. Wulf asserts that this statement during the prosecutor's closing argument constituted "asking the jury to send a message":

> Those three guys are the people that got hurt in this case. They're all out-of-towners. They're all out-of-staters. The defendant is out of town here. Those three men came to your county, and they were deceived, and they were took. People that live here or people that come here should not be took by other people.

While prosecutors cannot "urge the jurors to convict the defendant in order to protect community values and prevent further criminal activity" in a manner that

amounts to "an improper emotional appeal designed to persuade the jury to decide the case on issues other than the facts before it," that is not what occurred here. *See State v. Johnson*, 534 N.W.2d 118, 127–28 (Iowa Ct. App. 1995). Rather, it appears the prosecutor was driving home the point that no person, regardless of where the person is from, should be subject to theft by deception.[3] *See* Iowa Code § 714.1(3) (2015). Even if this portion of closing argument amounted to prosecutorial misconduct and counsel should have objected, Wulf cannot establish that had counsel objected the outcome of the trial likely would have been different. *See Johnson*, 534 N.W.2d at 128. The comment amounted to six lines of transcript of the State's closing argument, which spanned almost nineteen pages.[4] It was a fleeting reference in a thorough and comprehensive closing argument. We cannot conclude that, had counsel objected to this passing comment, the outcome of the trial would have likely been different. So Wulf has not established the prejudice necessary to obtain relief on this ground.

### 3. References to Pre-trial Detention

Finally, Wulf contends the prosecutor committed misconduct during jury selection, while questioning Deputy O'Dell and Wulf's landlord, and during closing arguments, by referencing the fact that Wulf had been arrested for the charged offenses and taken to the county jail. He contends the "comments were akin to Wulf appearing for trial in prison garb or shackled: they were inherently prejudicial[] because they undermined the presumption of innocence." *See id.* at 126 ("The

---

[3] The trial information and jury instructions made clear the State was alleging Wulf committed theft by deception.

[4] Each page of transcript includes twenty-five lines.

[S]tate cannot compel a defendant to stand trial in identifiable prison clothing."). We do not consider the references to Wulf's arrest and stay at the county jail as being functionally the same as a defendant appearing before the jury in prison clothing. And Wulf points us to no authority barring references to the defendant's arrest and subsequent detention. As such, he cannot show the prosecutor acted with reckless disregard or intentionally sought to inform the jury of some prohibited information. Counsel had no duty to object, and Wulf is not entitled to relief on this ground.

### C.     Prior Bad Acts Testimony

Next, Wulf claims counsel was ineffective for failing to object to prior-bad-acts evidence, which was introduced through testimony of four witnesses. "[E]vidence of prior bad acts is not admissible for purposes of proving character." *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014); *see also* Iowa R. Evid. 5.404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). However, the "evidence may be admissible for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

First, Wulf argues counsel should have objected to testimony from his former landlord about his history of bouncing checks. But defense counsel explained during the PCR proceedings that he had a strategic reason for not objecting to the testimony. *See Ledezma*, 626 N.W.2d at 143. Specifically, he didn't object so that the jury would also hear that Wulf "ended up making the check

good or paid cash" and actually provided housing for hunters. While reasonable minds could disagree on whether this was the most prudent strategy, it did further his defense theory that Wulf ultimately provided the services he claimed he would. Because counsel had a reasonable trial-strategy-based reason for not objecting, counsel was not ineffective. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) ("When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." (quoting *Fryer v. State*, 325 N.W.2d 400, 413 (Iowa 1982))).

Second, Wulf complains Conservation Officer Stuchel's testimony that he was investigating hunting violations and had received a trespassing complaint about Wulf amounted to impermissible evidence of prior bad acts. As to the trespassing complaint, on cross-examination, Wulf's counsel had Stuchel clarify that he never pursued a trespassing charge against Wulf, thus suggesting that the purported prior bad act never occurred. With respect to Stuchel's references to investigating hunting violations, counsel made a strategic decision not to object to the testimony in effort to not draw attention to it. Counsel's decision to address the trespass comment by clarifying Wulf had never been charged and to not draw attention to the hunting violation investigation were reasonable trial strategies that we will not second-guess. *See id.* Counsel did not breach an essential duty by not objecting.

Third, Wulf points to testimony from his former employee explaining that the former employee quit because he "had trouble getting paid" as impermissible prior-bad-acts evidence. We disagree with his characterization of the testimony as impermissible prior-bad-acts evidence. Instead, it was admissible to show motive

for Wulf's criminal scheme—he was cash poor and needed money to pay his debts, including his payroll. *See* Iowa R. Evid. 5.404(b)(2). Accordingly, counsel had no duty to object, and Wulf's claim fails.

Finally, Wulf complains the motel manager testifying about Wulf's credit card being declined at times amounted to prior-bad-acts evidence. But once again, we think this evidence was properly admitted to establish motive because it highlighted Wulf's cash-flow problems. *See id.* So, again, counsel had no duty to object, and Wulf's claim fails.

### D.    Cumulative Prejudice

Wulf's final argument is that the cumulative prejudice of counsel's missteps deprived him of a fair trial. "Iowa recognizes the cumulative effect of ineffective assistance of counsel claims when analyzing prejudice under *Strickland*." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). "[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong of *Strickland*." *Id.* When a claimant raises multiple grounds of ineffective-assistance and the court resolves the claims on the prejudice prong without considering whether counsel failed to perform an essential duty, then the overall claim can only be dismissed after considering the potential prejudice cumulatively. *Id.*

Here, we arguably resolved some of Wulf's claims on the prejudice prong without reaching a definitive decision as to whether counsel breached an essential duty. Those claims include Wulf's (1) Confrontation Clause and hearsay claims regarding Game Warden Rush's testimony about receiving complaints about Wulf, (2) hearsay claim regarding Deputy O'Dell's testimony about what the hunters told

him, (3) and prosecutorial misconduct claim relating to the State's closing argument. Even considering the potential cumulative prejudice of these claims, which would be minimal with respect to each claim, our confidence in Wulf's convictions is not shaken, and we conclude Wulf received a fair trial. Wulf did not suffer cumulative prejudice and is not entitled to relief on this basis either.

**III.    Conclusion**

Following our de novo review of the record, we conclude Wulf failed to establish he received ineffective assistance from his trial counsel with respect to any of his claims. The PCR court properly denied his application for PCR.

**AFFIRMED.**